**J.L. DEMPSEY and Sharron Ann Dempsey, Appellants,**

v.

**PFIZER, INC., Tobey Clemons, and Clarence Conn, Appellees.**

No. 2–90–077–CV.

Court of Appeals of Texas, Fort Worth.

July 3, 1991.

Sharron Ann Dempsey and J.L. Dempsey, pro se.

Kelly, Hart & Hallman and Henry H. Robinson, Fort Worth, for appellee.

Before WEAVER, C.J., and HILL and MEYERS, JJ.

## OPINION

HILL, Justice.

J.L. Dempsey and his wife, Sharron Dempsey, appeal the trial court's discovery sanction in which the court dismissed with prejudice most of their claims and causes of action against Pfizer, Inc., Mr. Dempsey's employer, and Tobey Clemons and Clarence Conn, Mr. Dempsey's regional and district supervisors. The court imposed its sanction pursuant to TEX. R.CIV.P. 215(2)(b)(5) upon finding that Mr. Dempsey had, after filing suit, intentionally destroyed handwritten notes he had made of conversations that were the basis of his primary claims and causes of action. Because Mrs. Dempsey's claims were found to be derivative of those alleged by her husband, her claims were also dismissed with prejudice. The court excepted from its sanction the Dempseys' claim for slander made to persons outside Pfizer and their claim of harassment after suit was filed because such claims were not related to the destroyed notes. In three points of error, the Dempseys urge that: (1) the discovery sanction imposed against Mrs. Dempsey was an abuse of discretion because there was no evidence that she

abused the discovery process; (2) the discovery sanction was an abuse of discretion because it did not meet with any of the purposes that discovery sanctions were intended to further, and the information sought from the destroyed notes was available from other sources; and (3) the discovery sanction was an abuse of discretion because the court acted arbitrarily and unreasonably and because there was no evidence to show that Mr. Dempsey intentionally destroyed his notes to circumvent discovery.

We affirm because we hold that: (1) the trial court's dismissal with prejudice would serve to punish the Dempseys and serve as a warning to others who might be tempted to destroy evidence during discovery; and, furthermore, the destroyed evidence was not available from other sources; (2) the court did not abuse its discretion in imposing the sanction in that its sanction was not arbitrary or unreasonable, nor was the sanction imposed without reference to guiding principles or rules; and (3) Mrs. Dempsey's claims were derivative of those of her husband, and the evidence necessary to prosecute her claims or defend against her claims was the same evidence needed to prosecute and defend against her husband's claims.

In their original petition, the Dempseys sued Clemons and Conn for $42,000,000 based upon the alleged mistreatment of Mr. Dempsey while employed at Pfizer. Pfizer was named as a defendant under a theory of respondeat superior. The Dempseys alleged causes of action based on intentional infliction of emotional distress, slander, business disparagement, tortious interference with contract rights, and conspiracy. They sought actual and punitive damages. In general, the Dempseys alleged that Conn attempted to coerce Mr. Dempsey to engage in unethical or illegal conduct to increase his sales, and that when Dempsey refused he became the target of a retaliatory conspiracy aimed at destroying his career.

During direct examination at the sanctions hearing, Mr. Dempsey testified that: (1) he discarded personal notes of conversa-tions he had with Conn, his supervisor, after transposing his notes in answering Pfizer's interrogatories because it seemed redundant to keep the notes after he had transposed them; (2) it was not until after he discarded the notes that he received Pfizer's request for production which included a request to produce the notes; and (3) the information in the notes could be compiled from other sources such as the testimony of other persons present during the conversations and tape recordings of the conversations.

However, on cross-examination, Mr. Dempsey testified that: (1) in 1986 he had private conversations with Conn on March 3, 4, 5, and 9; on April 17 and 24; on June 10; and on July 30; (2) that he made notes of most of the meetings and there were no tape recordings of the meetings; (3) that the notes of the meetings had been destroyed after being transposed for other purposes; and (4) the July 30 meeting triggered his lawsuit, but the other meetings for which the notes were destroyed were also the basis of his lawsuit. Although Mr. Dempsey gave a deposition in which he admitted destroying the notes after receiving Pfizer's request for production, he testified at the sanctions hearing that he was confused by the terms interrogatories and requests for production, and meant to say in his deposition that he destroyed his notes after answering the interrogatories, but before receiving the requests for production.

The statement of facts from the sanctions hearing also reveals other events which, taken as a whole, point to problems with discovery in this case. Dempsey had been granted two extensions in which to respond to Pfizer's request for production, the second being granted so that he could obtain new counsel. At the time of the sanctions hearing the court was also hearing Pfizer's motion to compel the production of tape recordings that Mr. Dempsey had been requested to produce at a deposition, but had refused on the grounds of an investigative privilege. Although Dempsey had originally wanted the court to review the tapes *in camera*, he offered to supply the tapes to Pfizer without the necessity of judicial intervention. However, some of

the tapes which Pfizer requested appeared, at the time of the hearing, to be unobtainable, possibly in the possession of one of Mr. Dempsey's prior attorneys.

In addition, prior to the sanctions hearing in question, the court had imposed monetary sanctions against Mr. Dempsey for scheduling seven depositions with less than twenty-four hours notice to the deponents. Moreover, Mr. Dempsey had scheduled the depositions before he himself had been deposed, but he had agreed to be deposed first in exchange for being granted an extension in which to respond to Pfizer's request for production.

■ We first address the Dempseys' point of error number two in which they argue that sanctions in this case would not further the purpose behind sanctions and that the information sought from Mr. Dempsey's handwritten notes was available from other sources, namely other witnesses who were present and tape recordings.

We hold that there is no merit to Dempsey's claim that the imposition of the court's sanction will not further the intended purposes of sanctions under TEX. R.CIV.P. 215. The sanction imposed by the court will undoubtedly punish Mr. Dempsey for violating the rules of discovery and will deter other litigants from doing so. *Bodnow Corp. v. City of Hondo,* 721 S.W.2d 839, 840 (Tex.1987). Although neither party to this suit disputes the fact that Mr. Dempsey did produce a voluminous number of documents in response to Pfizer's request for production, original notes of crucial conversations were destroyed. Pfizer is now in no position to determine how fully or accurately the notes may have been transposed in a suit claiming $42,000,000 in damages.

In addition, we hold that Mr. Dempsey's testimony at the sanctions hearing directly refutes the argument he presents on appeal. He testified that many of the conversations that were the basis of his suit were private conversations with no one else present, and the conversations were not recorded. Although he claims to have transposed the same information contained in his notes to his answers to Pfizer's interrogatories, he, by his own admission, destroyed his original notes. We overrule point of error number two.

■ In point of error number three, the Dempseys argue that the trial court abused its discretion by arbitrarily and unreasonably imposing its sanction in the absence of any evidence that Mr. Dempsey intentionally destroyed his notes in order to circumvent the discovery process. We note that in determining whether the court abused its discretion we are not called upon to decide whether we would issue the same sanction, but whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

We hold that the court did rely on guiding rules and principles in imposing its sanction because it found that Mr. Dempsey's destruction of his notes was intentional. There is no doubt that the destruction of the notes was an intentional act, and we hold that the evidence was sufficient to allow the court to conclude that the notes were destroyed with the intention of circumventing discovery. Although Mr. Dempsey testified at the sanctions hearing that he destroyed his notes before receiving Pfizer's request for production, the court found that a reasonable person would have been aware of the importance of the notes to the litigation. Mr. Dempsey's equivocating testimony at the sanctions hearing, which was impeached on cross, as well as the other discovery difficulties which had occurred in the past and some of which appeared to be ongoing, was sufficient evidence to allow the court to conclude that the destruction of the notes could have been done in bad faith. *See Overstreet v. Home Indemnity Co.,* 747 S.W.2d 822, 826 (Tex.App.—Dallas 1987, writ denied) holding that in imposing an appropriate sanction the court is not limited to considering the specific violation for which the sanction is to be imposed, but can consider everything that has occurred during the litigation.

We further hold that the court was under no obligation to impose a sanction less severe than striking the Dempseys' claims. *See Skinner v. Grimes Iron & Metal,* 766 S.W.2d 550, 551 (Tex.App.—Fort Worth 1989, no writ), in which this court held that dismissal of plaintiff's suit was appropriate where the plaintiff failed to answer interrogatories, but supplemented his answers prior to the defendant's motion to dismiss.

We also hold that the court did not act arbitrarily or unreasonably in imposing its sanction. At the hearing the court noted that it was concerned about the discovery proceedings in the case. The court also noted that it was very concerned about Mr. Dempsey's destruction of his notes and that it was going to take several days to consider the matter. In addition, the court was careful not to impose a sanction on the Dempseys' claims that were not affected by the destruction of the notes. The statement of facts, in conjunction with the court's order, indicates that the court's decision was a thoughtful, measured response to the evidence it had before it.

Finally, in regard to point of error number three, we hold that Mr. Dempsey misplaces his reliance on *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) to show that his due process rights were violated by the court's imposition of the ultimate sanction, dismissal. Although *National,* interpreting FED.R.CIV.P. 37, the federal precursor to TEX.R.CIV.P. 215, contains language to the effect that a court should not dismiss a suit when discovery violations are not the fault of the offending party, such lack of fault is not present in the case before us. Moreover, *National* emphasizes the discretion to be accorded the trial court in imposing sanctions for discovery violations:

> There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order....
> But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the District [trial] Court in

appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. *Id.* at 642, 96 S.Ct. at 2780. We overrule point of error number three.

■ In point of error number one, the Dempseys argue that the court erred in dismissing Mrs. Dempsey's claims because she did not violate discovery requests and because her claim is not derivative of her husband's. We hold that *Bodnow,* relied upon by the Dempseys to show that innocent parties should not be sanctioned for the discovery violations of a co-party, is distinguishable from this case because *Bodnow* did not involve the dismissal of a derivative claim. *Bodnow,* 721 S.W.2d at 840. The Dempseys' petition reveals that the acts relied upon by Mrs. Dempsey to sustain her cause of action are acts allegedly committed by Pfizer against Mr. Dempsey. The evidence that Mrs. Dempsey must rely on to prosecute her claim is the same that must be relied upon by her husband to prosecute his, and the evidence that Pfizer must rely upon to defend against her claim is the same that must be relied upon to defend against her husband's claim. We hold that Mrs. Dempsey's claims which were dismissed were derivative of her husband's claims which were dismissed because her claims arose only as a consequence of her husband's alleged injuries and claims. *See Merrill Lynch, Pierce, Fenner, and Smith, Inc. v. Longoria,* 783 S.W.2d 229, 230–31 (Tex. App.—Corpus Christi 1989, no writ) in which the court found that a wife's claim for loss of consortium was derivative of her husband's suit for his wrongful discharge. We further hold that because Mrs. Dempsey's claims were derivative of those of her husband, the court properly dismissed her claims. *Phennel v. Roach,* 789 S.W.2d 612, 615 (Tex.App.—Dallas 1990, writ denied). We overrule point of error number one.

The judgment is affirmed.